HUB CITY FOODS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6414-86.          Filed February 18, 1988.

*Peter J. Lettenberger, Michael J. Conlan,* and *Dana L. O'Brien,* for the petitioner.
*Edward J. Roepsch,* for the respondent.

## OPINION

STERRETT, *Chief Judge:*\* By notice of deficiency dated December 18, 1985, respondent determined deficiencies in petitioner's Federal income taxes for the calendar years 1976 and 1977 in the amounts of $33,074 and $65,944, respectively. The deficiencies result from respondent's disallowance of an investment credit that petitioner claimed in 1979 and carried back to 1976 and 1977. Due to concessions by petitioner, the only issue presented in this case is whether petitioner is entitled to an investment credit under section 38[1] with respect to a freezer facility that petitioner constructed and placed in service in 1979.

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner Hub City Foods, Inc., is a corporation organized under the laws of the State of Wisconsin. At the time the petition was filed in this case, petitioner's principal office was located in Marshfield, Wisconsin. Petitioner filed its Federal income tax returns for the years in issue with the Office of the Internal Revenue Service in Kansas City, Missouri.

Petitioner is a wholesale distributor of grocery items to both full service and convenience grocery stores. Petitioner purchases grocery items from a variety of vendors, stores and inventories the items at its Marshfield distribution center, and then sells the items to retail outlets. In 1979, petitioner's total sales of grocery items amounted to $34,214,107.

Petitioner maintains a fleet of trucks for use in its business operations. Petitioner uses these trucks primarily to deliver the grocery items it sells to retailers. Virtually all

---

\*By order of the Chief Judge, this case was reassigned to the Chief Judge for opinion and decision.

[1]Unless otherwise indicated, all sections referred to are sections of the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all Rules referred to are Rules of the Tax Court Rules of Practice and Procedure.

of the grocery items sold by petitioner are delivered to retailers in petitioner's trucks, and petitioner bears the risk of loss of the grocery items until they are actually delivered to the retailers. At all times relevant to this proceeding, petitioner's trucking operations were subject to regulation by the U.S. Department of Transportation, the Interstate Commerce Commission, and the Wisconsin Department of Transportation.

In addition to using its trucks to deliver the grocery items it sells to retailers, petitioner also uses them to transport goods owned by third parties between locations designated by those parties. In 1979, petitioner transported an average of one to two loads of goods each day for third parties to locations designated by those parties, receiving a total of $68,429 for providing such service.

In 1979, petitioner constructed and placed in service a new structure consisting of a freezer facility, a loading dock and corridor, an employees' warmup room, and an electrical controls and storage room. This structure was built alongside and attached to the existing facilities at petitioner's Marshfield distribution center, covers approximately 25,028 square feet, has the appearance of a building, appears to be an inherently permanent structure, and does not have the appearance of equipment.

The freezer facility, which covers 18,860 square feet and cost $841,666, was designed to store frozen food products and is capable of maintaining a temperature of minus 18 degrees Fahrenheit. Petitioner's employees work in the freezer facility only to deposit, inventory, and pick up frozen food items, and to perform repairs and maintenance. While in the freezer facility, petitioner's employees wear clothing which provides cold weather protection, including insulated coveralls with hoods, insulated boots, and gloves.

At all times relevant to this proceeding, none of the goods owned by third parties and transported by petitioner between locations designated by those parties were stored or inventoried in the freezer facility.

On its 1979 Federal income tax return, petitioner claimed an investment credit with respect to the freezer facility, the loading dock and corridor, the employees' warmup room, and the electrical controls and storage room in the aggre-

gate amount of $99,018. Petitioner subsequently carried $33,074 of this credit back to 1976 and $65,944 of the credit back to 1977. In his notice of deficiency, respondent disallowed the credit, asserting that the property for which the credit was claimed does not constitute "section 38 property." On brief, petitioner concedes that it is not entitled to an investment credit with respect to the loading dock and corridor, the employees' warmup room, and the electrical controls and storage room. Petitioner contends, however, that it is entitled to an investment credit under section 38 with respect to the freezer facility in the amount of $84,166.

We must decide whether petitioner is entitled to an investment credit with respect to the freezer facility under section 38. Section 38 allows a credit against income tax, in an amount determined under section 46, for qualified investments in "section 38 property." The term "section 38 property" is defined in section 48(a)(1), which provides, in relevant part, as follows:

SEC. 48. DEFINITIONS; SPECIAL RULES.
  (a) SECTION 38 PROPERTY.—
    (1) IN GENERAL.— * * * the term "section 38 property" means—
      (A) tangible personal property * * * , or
      (B) other tangible property (not including a building and its structural components) but only if such property—
        (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or
        (ii) constitutes a research facility used in connection with any of the activities referred to in clause (i), or
        (iii) constitutes a facility used in connection with any of the activities referred to in clause (i) for the bulk storage of fungible commodities * * *
Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more.

Petitioner concedes that the freezer facility does not qualify as section 38 property under subsections (a)(1)(A), (a)(1)(B)(ii), or (a)(1)(B)(iii) of section 48. Petitioner also concedes that the freezer facility was not used as an integral part of manufacturing, production, or extraction within the meaning of section 48(a)(1)(B)(i). Petitioner con-

tends, however, that the freezer facility qualifies as section 38 property under section 48(a)(1)(B)(i), arguing that the freezer facility constitutes other tangible property used as an integral part of furnishing transportation.

Respondent counters by arguing that the freezer facility was not used as an integral part of furnishing transportation within the meaning of section 48(a)(1)(B)(i). Respondent also argues, in the alternative, that the freezer facility is a building and consequently does not qualify as "other tangible property" within the meaning of section 48(a)(1)(B). Respondent finally argues, again in the alternative, that clauses (i) and (iii) of section 48(a)(1)(B) are mutually exclusive, and that the freezer facility is "a non-qualified 'storage facility' under * * * [section] 48(a)(1)(B)(iii)." For the reasons set forth below, we conclude that petitioner's freezer facility was not used as an integral part of furnishing transportation within the meaning of section 48(a)(1)(B)(i). Consequently, we need not consider respondent's alternative arguments.

Property is used as an integral part of furnishing transportation within the meaning of section 48(a)(1)(B)(i) only if the property is used directly in the activity of furnishing transportation and is essential to the completeness of the activity, and only if the property is so used by one engaged in the trade or business of furnishing transportation. Sec. 1.48-1(d)(1) and (4), Income Tax Regs. See *Vail Associates, Inc. v. Commissioner*, 88 T.C. 1391, 1400-1401 (1987). "Thus, if a manufacturing firm constructs an airstrip for use by airplanes operated for the convenience of its officers and employees, such airstrip would not qualify as section 38 property since the manufacturing firm is not engaged in the transportation business." H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 516; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 859. "Examples of transportation businesses include railroads, airlines, bus companies, shipping or trucking companies, and oil pipeline companies." Sec. 1.48-1(d)(3), Income Tax Regs.

Petitioner contends that it is in the transportation business, arguing that the activity of transporting its own goods to retailers constitutes the trade or business of

furnishing transportation. Petitioner further contends that the freezer facility is used as an integral part of furnishing transportation because, but for the freezer facility, petitioner's frozen food items would spoil and, as a result, petitioner would not be able to engage in the activity of transporting these items to retailers. We reject both of these contentions for the following reasons.

Petitioner's activity of transporting its own goods to retailers is purely incidental to its primary business of providing grocery items to retailers, and a service that is incidental to and only a part of a taxpayer's primary business does not constitute a separate trade or business for purposes of section 1.48-1(d)(1), Income Tax Regs. *Mt. Mansfield Co. v. Commissioner,* 50 T.C. 798, 800-801 (1968), affd. 409 F.2d 845 (2d Cir. 1969). Moreover, we perceive nothing in section 48, its legislative history, or the regulations that suggests that a taxpayer that transports only its own products to customers is engaged in the trade or business of furnishing transportation. To the contrary, the transportation businesses used as examples in section 1.48-1(d)(3), Income Tax Regs., all have one thing in common, namely, they all provide transportation services to third parties for hire. These examples, "while not exclusive, circumscribe and are indicative of the types of businesses that are 'commonly accepted' as transportation businesses." *Mt. Mansfield Co. v. Commissioner, supra* at 802. Consequently, we conclude that, for purposes of section 48 and the regulations thereunder, petitioner's activity of transporting its own goods to retailers does not constitute a separate trade or business of furnishing transportation.[2]

We recognize that a very minor portion of petitioner's business consists of transporting goods owned by third parties between locations designated by those parties, and that this activity may constitute a separate trade or business of furnishing transportation within the meaning of section 1.48-1(d)(1), Income Tax Regs. However, petitioner does not argue that the freezer facility was used as an integral part of this activity and, given that none of the

---

[2]Petitioner argues that it must be considered to be in the transportation business because of the Supreme Court's decision in *United States v. Drum,* 368 U.S. 370 (1962). That case does not aid petitioner, however, because it did not involve sec. 48 or the regulations thereunder.

goods owned by third parties and transported by petitioner were stored or inventoried in the freezer facility, we do not see how petitioner could have made such an argument.

Finally, even if petitioner's activity of transporting its own goods to retailers could be characterized as a transportation business for purposes of section 48 and the regulations thereunder, we do not believe that the freezer facility was used as an integral part of "furnishing transportation." In *Commissioner v. Schuyler Grain Co.*, 411 F.2d 649 (7th Cir. 1969), a case with facts similar to the facts of this case, the taxpayer purchased grain from farmers, stored the grain in storage bins until it was sold, and then delivered the grain in vehicles owned by the taxpayer to those who had purchased it. In dismissing the notion that the storage bins had been used in connection with furnishing transportation within the meaning of section 48(a)(1)(B), the Seventh Circuit simply stated that "we find little support in arguing that the storage facilities in question may be said to have been used in connection with 'furnishing transportation.'" 411 F.2d at 652.[3] Similarly, we find no merit in petitioner's contention that the freezer facility, which was simply used to store grocery items purchased by petitioner until the items could be sold to retailers, was used as an integral part of "furnishing transportation."

In our opinion, petitioner's activity of transporting its own goods to retailers does not constitute a transportation business for purposes of section 48 and the regulations thereunder, and the freezer facility was not used as an integral part of "furnishing transportation." We hold, therefore, that the freezer facility does not constitute "other tangible property * * * used as an integral part of * * * furnishing transportation" within the meaning of section 48(a)(1)(B)(i), and, consequently, that petitioner is not entitled to an investment credit with respect to the freezer facility under section 38.

*Decision will be entered for the respondent.*

---

[3] If property is not used in connection with any of the activities specified in sec. 48(a)(1)(B)(i), it necessarily follows that such property is not used as an integral part of any of those activities. See *Schuyler Grain Co. v. Commissioner,* 50 T.C. 265, 269 n. 6 (1968), affd. 411 F.2d 649 (7th Cir. 1969).